**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Burroughs, | No. CV-16-00724-TUC-BGM |
| Plaintiff, | **ORDER** |
| v. | |
| City of Tucson, a municipal corporation of the State of Arizona, | |
| Defendant. | |

Currently pending before the Court is Defendant City of Tucson's Motion for Summary Judgment (Doc. 45). Defendant has also filed a Statement of Facts in Support of Its Motion for Summary Judgment ("SOF") (Doc. 46). Plaintiff has responded ("Response") (Doc. 50) and filed his Separate Statement of Facts in Support of Opposition to Defendant's Motion Summary Judgment and Response to Defendant's Statement of Facts ("SSOF") (Doc. 51), and Defendant replied (Doc. 54). Oral argument was heard on August 22, 2018. Minute Entry 8/22/2018 (Doc. 57). As such, the motion is fully briefed and ripe for adjudication.

## I.    FACTUAL BACKGROUND

### A.    *Plaintiff's Employment with Tucson Fire Department*

#### 1. Pre-hire

Plaintiff Michael Burroughs worked as a full-time firefighter for Raytheon's Fire Department for approximately three (3) to four (4) years. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 12:19–13:1, Bates Nos. COTMSJ0037–0038. On April

17, 2015, Plaintiff began working as a firefighter for Tucson Fire Department ("TFD") when the City of Tucson took over the Raytheon Fire Department. Complaint (Doc. 1) at ¶ 9; Answer (Doc. 7) at ¶ 9. Prior to the takeover, TFD personnel met with Raytheon firefighters, including Plaintiff, regarding what was happening with Raytheon's Fire Department, providing the option of trying to become TFD employees, and discussing the physical tests that the firefighters would have to pass. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 18:18–20:10, Bates Nos. COTMSJ0039–0041. Plaintiff recalled TFD personnel discussing what the physical fitness test would consist of, and that passing was a requirement for "mov[ing] on." *Id.*, Burroughs Depo. 10/26/2017 at 19:21–20:10, Bates Nos. COTMSJ0040–0041.

On September 16, 2014, Plaintiff participated in the Candidate Physical Ability Test, but failed due to not completing it in the amount of time allotted. *Id.*, Burroughs Depo. 10/26/2017 at 23:10–25:3, Bates Nos. COTMSJ0042–0044 & Exh. "1," Bates No. COTMSJ102. On September 30, 2014, Plaintiff again participated in the Candidate Physical Ability Test and passed. *Id.*, Burroughs Depo. 10/26/2017 at 25:4–19, Bates Nos. COTMSJ0044 & Exh. "1," Bates No. COTMSJ103. On April 9, 2015, Plaintiff filled out a Fitness Questionnaire, and marked "No" to all of the questions including "Do you have any injuries, illnesses or disabilities that would prevent you from performing a fitness assessment?" *Id.*, Burroughs Depo. 10/26/2017 at 27:16–28:9, Bates Nos. COTMSJ0045–0046 & Exh. "3," Bates No. COTMSJ0104. On the same date, City Physician Dr. Wayne Peate evaluated Plaintiff and concluded he was capable of performing the duties of a firefighter. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 28:19–29:24, Bates No. COTMSJ0046–0047 & Exh. "4," Bates No. COTMSJ0105.

Plaintiff completed a New Hire EEO form, and marked "No" next to "Disabled." *Id.*, Burroughs Depo. 10/26/2017 at 144:23–145:12, Bates Nos. COTMSJ0098–0099 & Exh. "24," Bates No. COTMSJ0134. Plaintiff, as one of the firefighters going from Raytheon's Fire Department to TFD, also received the *Tucson Fire Academy Guidelines*

*for Recruit Disciplinary Action* authored by then Deputy Chief Michael Fischback. *Id.*, Burroughs Depo. 10/26/2017 at 138:11–23, Bates No. COTMSJ0096 & Exh. "22," Bates Nos. COTMSJ0110–33. Upon receipt, Plaintiff read through the manual and was aware of the expectations set forth in the document. *Id.*, Burroughs Depo. 10/26/2017 at 140:4–11, Bates No. COTMSJ0097. Plaintiff was also aware that TFD had its own policies and manual, and that the City of Tucson had administrative directives with which City employees were required to be familiar. *Id.*, Burroughs Depo. 10/26/2017 at 140:12–24, Bates No. COTMSJ0097.

## 2. Plaintiff's Twelve (12) Weeks at the TFD Academy

On April 20, 2015, Plaintiff began the twelve-week training at the Academy. Compl. (Doc. 1) at ¶ 10; Answer (Doc. 7) at ¶ 10. Captain Vera Wuerfel was the lead training captain. Pl.'s SSOF (Doc. 51), Wuerfel Depo. 11/6/2017 (Exh. "3") 10:22–25. Captain Ed Lopez, Jr. was also a training captain at the Academy. *Id.*, Lopez Depo. 11/6/2017 (Exh. "4") at 7:4–10. Chief Mike Fischback was the department chief in charge of training. *Id.*, Exh. "3" at 12:12–14. Plaintiff reported to Captains Wuerfel and Lopez at the Academy. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 34:20–35:3, Bates Nos. COTMSJ0048–49. Paramedic Tyler Berndt assisted these Captains. *Id.*, Burroughs Depo. 10/26/2017 at 34:20–35:7; Pl.'s SSOF (Doc. 51), Exh. "3" at 11:8–21.

On approximately May 21, 2015 and again on or about June 16, 2015, Captain Wuerfel authored memoranda providing feedback to Plaintiff. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 43:8–45:19, Bates Nos. COTMSJ0056–58. Plaintiff does not recall receiving the memoranda, but does recall getting feedback at least twice during his time at the academy. *Id.* Captain Wuerfel did not recall the June 16th date or the specifics of a counseling session regarding the June 16th memorandum; however, Captain Wuerfel recalled having several counseling sessions with Plaintiff. Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 27:24–28:7, Bates Nos. COTMSJ0136–37. Captain Wuerfel testified that the only counseling session with Plaintiff that she really

remembered was talking to him about some of the issues that he was having, including an inability to complete drills and his poor attitude. *Id.*, Wuerfel Depo. 11/6/2017 at 28:11–29:5, Bates Nos. COTMSJ0137–38. Captain Wuerfel asked Plaintiff if there was something going on that he wanted them to know, and he responded that he was thinking about quitting the academy. *Id.* Plaintiff began to cry and explained that the academy was too hard for him; his wife was not letting him see his child; and he was having personal issues. Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 28:11–29:5, Bates Nos. COTMSJ0137–38. Captain Wuerfel noticed Plaintiff was not completing his drills, he had a poor attitude, and was not as motivated as when he first came in to the Academy.[1] *Id.*, Wuerfel Depo. 11/6/2017 at 29:21–30:3, Bates Nos. COTMSJ0138–39.

On June 22, 2015, approximately two (2) months into the Academy, Plaintiff was flipping a tire when he "went to stand up with it and flip it, and [he] got this shooting pain down both of [his] legs and pain in [his] back, and [he] fell to the ground . . . ." *Id.*, Burroughs Depo. 10/26/2017 at 35:8–23, Bates No. COTMSJ0049. All of the TFD recruits were required to perform the task of flipping a tire as part of their circuit training that day. *Id.*, Burroughs Depo. 10/26/2017 at 36:10–14, Bates No. COTMSJ0050. Plaintiff recalls Paramedic Berndt, Captain Wuerfel, and then the rest of his class coming to his aid. *Id.*, Burroughs Depo. 10/26/2017 at 36:15–20, Bates No. COTMSJ0050. Plaintiff further recalls that he was given a bag of ice, he was put on the golf cart, and then he was taken to the City physician for evaluation. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 36:21–37:4, Bates Nos. COTMSJ0050–51. Plaintiff was evaluated by Dr. Marjorie Eskay-Auerbach and diagnosed with a "lumbar strain." *Id.*, Burroughs Depo. 10/26/2017 at 37:14–38:18, Bates Nos. COTMSJ0051–52 & Exh. "5"—City of Tucson Supervisor's Report of Injury (Part B) to be Completed by Evaluating Physician, Bates No. COTMSJ0106. Dr. Eskay-Auerbach released Plaintiff back to work without

---

[1] Plaintiff disputes this statement, arguing that Captain Wuerfel's conclusions are incorrect; however, her testimony was that these were the problems that she noticed.

restriction.[2]  Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 38:19–40:11, Bates Nos. COTMSJ0052–54 & Exh. "5," Bates No. COTMSJ0106 & Exh. "6"—Tucson Fire Training Academy—Training Activity Restrictions, Bates No. COTMSJ0107.  Plaintiff returned to the academy following his evaluation by Dr. Eskay-Auerbach, and upon his return Captain Wuerfel saw his fit for duty paperwork.  Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 36:18–37:10, Bates Nos. COTMSJ0140–41.  Captain Wuerfel did not specifically ask Plaintiff what his injuries were, what they diagnosed him with, or what his treatment plan was.  *Id.*, Wuerfel Depo. 11/6/2017 at 37:2–10, Bates No. COTMSJ0141.  Captain Wuerfel's conversation with Paramedic Berndt on the same date regarding Plaintiff was inquiring if he got a fit for duty form returned, and he said "yes."  *Id.*, Wuerfel Depo. 11/6/2017 at 37:11–14, Bates No. COTMSJ0141.  Paramedic Berndt may have also told Captain Wuerfel that Plaintiff had a back strain, but she did not recall the conversation.  *Id.*, Wuerfel Depo. 11/6/2017 at 37:15–19, Bates No. COTMSJ0141.

On or about June 24, 2015, Captain Wuerfel prepared a Special Counseling

---

[2] Plaintiff testified regarding his belief that Dr. Eskay-Auerbach released him without restriction, because he told her they were doing an EMT refresher course for the rest of the week. Pl.'s SSOF (Doc. 51), Burroughs Depo. 10/26/2017 at 38:23–39:12, Bates Nos. COTMSJ0052–53. The Tucson Fire Training Academy—Training Activity Restrictions form completed by Dr. Eskay-Auerbach instructs that "[c]ircling 'YES' indicates that the recruit is physically capable of performing the activity listed below and circling 'NO' indicates that the recruit is not." Def.'s SOF (Doc. 46), Exh. "6," Bates No. COTMSJ0107. Dr. Eskay-Auerbach circled "Yes" for all of the physical activities listed. *Id.* The listed activities include running up to five (5) miles; sprinting short distances; basic calisthenics (including but not limited to: push-ups, pull-ups, sit-ups, core strength exercises and stretching); pushing, pulling and controlling charged hose lines with a nozzle reaction of 75 pounds of pressure directed against the recruit; executing fire ground evolutions (such as dragging a fire hose, raising ladders, operating gasoline powered equipment, etc.) while wearing up to 60 pounds of equipment; climbing a 100; aerial ladder with up to 100 pounds of safety equipment and tools; climbing a six-story staircase up to 20 times in succession; dragging and/or lifting a 180 pound person while wearing up to 60 pounds of safety equipment with the assistance of one other person; raising and carrying ground ladders weighing 30 to 50 pounds while wearing 60 pounds of safety equipment; working in extreme temperatures (350 plus degrees for 10 to 15 minutes while wearing up to 60 pounds of safety equipment); and hoisting up to 50 pounds of equipment to the top of a six-story building with a rope while wearing up to 60 pounds of safety equipment. *Id.* Plaintiff's personal belief regarding why Dr. Eskay-Auerbach released him without restriction is immaterial.

memorandum to address the issues Plaintiff was having, and provide him the opportunity to change his behavior prior to any actual discipline.[3] Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 40:22–42:3, Bates Nos. COTMSJ0142–44. Captain Wuerfel obtained the information for the Special Counseling memorandum from one-line notes on a page, which was sometimes the daily activity sheet.[4] *Id.*, Wuerfel Depo. 11/6/2017 at 43:6–44:14, Bates Nos. COTMSJ0145–46. Plaintiff did not remember receiving the memorandum while at the academy, nor does he remember receiving special counseling; however, he did remember some of the events outlined.[5] *Id.*, Burroughs Depo. 10/26/2017 at 52:3–55:11, Bates Nos. COTMSJ0059–62. Plaintiff did not remember the Captains telling him that he "needed to improve" in the areas of "TFD core values of teamwork and professionalism," but conceded that he was told he was not performing to standards. *Id.*, Burroughs Depo. 10/26/2017 at 56:19–57:14, Bates Nos. COTMSJ0063–64.

On the same date, Captain Wuerfel was informed that Plaintiff was having trouble sitting during PT class. Pl.'s SSOF (Doc. 51), Wuerfel Depo. 11/6/2017 at 48:16–49:24. Plaintiff was sent by Captain Wuerfel to the City Physician for evaluation. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 40:17–41:16, Bates Nos. COTMSJ0054–55; Pl.'s SSOF (Doc. 51) Wuerfel Depo. 11/6/2017 at 48:16–49:24. Dr. Stephanie Lundell evaluated Plaintiff, determined that he could perform the tasks required of a firefighter, and released him back to the Academy without restriction. Def.'s SOF (Doc. 46), Exh. "7"—Tucson Fire Training Academy—Training Activity Restrictions 6/24/2015, Bates

---

[3] Plaintiff does not dispute that Captain Wuerfel prepared the memorandum, but argues against her reasons, citing Plaintiff's injury two (2) days prior, as well as Captain Wuerfel's observations of Plaintiff's physical struggles.

[4] Plaintiff points to Captain Wuerfel's testimony that she did not plan to document issues, but that she had to start when she started having disciplinary and other issues. Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 43:6–19, Bates No. COTMSJ0145.

[5] Plaintiff was asked about four (4) of the five (5) events listed in the memo, and at least generally remembered two (2) of them.

No. COTMSJ0108.  Plaintiff did not have any work restrictions while at the Academy. *Id.*, Burroughs Depo. 10/26/2017 at 29:22–24, Bates No. COTMSJ0047 & Exhs. 4, 5, 6 & 14, Bates Nos. COTMSJ0105–07, COTMSJ0109.

On June 25, 2015, Captain Wuerfel recommended that Plaintiff be terminated, "[a]fter he snapped at a co-worker and snapped at [her], the totality of disciplinary stuff that went on and the fact that he snapped at a training officer and was aggressive in his tone[.]"  Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 53:6–54:23, Bates Nos. COTMSJ0147–48 & Exh. "7"—Memo. from Wuerfel to Fischback 6/25/2015, Bates Nos. COTMSJ0157–58.  Captain Wuerfel spoke with Chief Fischback regarding the recommendation, indicating that it was appropriate "[b]ased on [Plaintiff's] past performance and the fact that he violated one of our rules which was basically being aggressive with an instructor[—][n]ot only me but his teammate."[6]  *Id.*, Wuerfel Depo. 11/6/2017 at 54:10–23, Bates No. COTMSJ0148.  Captain Wuerfel testified that her request for termination was denied, because she had not previously given Plaintiff a "job in jeopardy" for snapping at his classmate.  *Id.*, Wuerfel Depo. 11/6/2017 at 55:3–56:5, Bates Nos. COTMSJ0149–50.  Captain Wuerfel further testified that because she had not given Plaintiff "special counseling," he was not given the opportunity to change his behavior, so administration asked her to change the termination into a "job in jeopardy." *Id.*, Wuerfel Depo. 11/6/2017 at 55:10–56:22, Bates Nos. COTMSJ0149–50.  Chief Fischback requested that Captain Wuerfel to make the job in jeopardy last throughout Plaintiff's probationary year, because the class was so close to graduating, there was insufficient time to evaluate Plaintiff further.  *Id.*  Plaintiff was told that he was on "job in jeopardy" status before he finished the Academy.  Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 63:22–24, Bates No. COTMSJ0066.  Plaintiff acknowledges the status was due to two incidents that occurred toward the end of the academy.[7]  *Id.*,

---

[6] Plaintiff objects alleging that Captain Wuerfel's reason were because of Plaintiff's disability and filing for worker's compensation.

[7] Plaintiff objects alleging that Plaintiff "did not testify that the status was as a result of

Burroughs Depo. 10/26/2017 at 63:22–6, Bates Nos. COTMSJ0066–67. Plaintiff understood that job in jeopardy status meant that he could lose his job. *Id.*, Burroughs Depo. 10/26/2017 at 64:7–16, Bates No. COTMSJ0067.

On July 2, 2015, Dr. Eskay-Auerbach evaluated Burroughs and again determined that he could perform all of the required tasks of a firefighter without restriction.[8] *Id.*, Burroughs Depo. 10/26/2017 at 62:3–63:8, Bates Nos. COTMSJ0065–66, & Exh. "14," Tucson Fire Training Academy—Training Activity Restrictions 7/2/2015, Bates No. COTMSJ0109. On July 9, 2015 Plaintiff successfully completed the Tucson Fire Transitional Academy and was provided a certificate in recognition of his completion. Def.'s SOF (Doc. 46), *Certificate of Completion*, Bates No. COTMSJ0162.

### 3. Plaintiff's Assignment to Station 16

Plaintiff was assigned to Station 16 when he finished the Academy. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 65:1–5, Bates No. COTMSJ0068. Captain Greene kept daily notes on Plaintiff's performance. *Id.*, Greene Depo. 11/7/2017 at 19:17–22 & Exh. "2," Bates Nos. COTMSJ0164, COTMSJ0167–69. Captain Greene noted Plaintiff "ha[d] no experience in swift water rescue and need[ed] a lot of work and training[;] . . . [needed to be] more aggressive around the station and on E[mergency ]M[edical ]S[ervice] calls[;] . . . [was] asking the other firefighters questions from his

---

two incidents, but rather that it occurred the same day." Plaintiff testified as follows:

> I just know that two incidents towards the end of the academy, the one where I said something to my classmate, and then one about when dragging the tire with less people around the tower. Those two times after those two things happened, I guess it was that day they put me on job-in-jeopardy status.

Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 64:1–6, Bates No. COTMSJ0067. Plaintiff unequivocally testified regarding two separate incidents, whether or not they occurred on the same day is immaterial.

[8] Plaintiff objects because his testimony was that he remembered going to see the City Physician on two days, he did not remember seeing Dr. Eskay-Auerbach necessarily on the date of the form he was presented, and the form does not bear his signature. Pl.'s SSOF (Doc. 51) at 23 ¶ 42. The precise date on which Plaintiff saw Dr. Eskay-Auerbach is immaterial, he did recall seeing her.

module instead of looking them up in his book[;] . . . struggled with cutting a vent[ilation] hole[;] . . . did not know how to connect into the EBSS (emergency breathing support system) during a rescue drill[;] . . . could not start the saw[;] . . . struggled knowing where all the tools and equipment were located on LD16[;] . . . [became] exhausted and dizzy and was unable to drill[;] . . . and could not don an airpack under 45 seconds."[9] *Id.*, Greene Depo 11/7/2017 at Exh. "2," Bates Nos. COTMSJ0167–69. Captain Greene discussed Plaintiff's physical performance, telling him that he "just needed to get better at [his] conditioning[.]" *Id.*, Burroughs Depo. 10/26/2017 at 68:23–69:9, Bates Nos. COTMSJ0069–70. While assigned to Station 16, Plaintiff saw a Peer Fitness Trainer one time, and "he may have" given Plaintiff advice on how to improve his physical conditioning. *Id.*, Burroughs Depo. 10/26/2017 at 78:15–25, Bates No. COTMSJ0072. Plaintiff testified that his understanding of physical conditioning is physical fitness level. *Id.* Plaintiff was never under work restrictions during his time at Station 16. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 75:12–21, Bates No. COTMSJ0071. Neither did Plaintiff ever request light duty while assigned to Station 16. *Id.*, Burroughs Depo. 10/26/2017 at 79:23–24, Bates No. COTMSJ0073.

### 4. Plaintiff's Assignment to Station 5

On September 15, 2015, Plaintiff was assigned to Station 5. Def.'s SOF (Doc. 46), Fleck Depo. 10/24/2017 at 26:24–27:8, Bates Nos. COTMSJ0172–73. Plaintiff understood that he was still on job-in-jeopardy status when he was assigned to Station 5. *Id.*, Burroughs Depo. 10/26/2018 at 85:22–25, Bates No. COTMSJ0074. When Plaintiff started at Station 5, Captain Glenn Fleck met with Plaintiff and the engine crew and explained to Plaintiff the expectations regarding his performing duties, as well as that they wanted him to succeed. *Id.*, Fleck. Depo. 10/24/2017 at 24:11–26:3, Bates No.

---

[9] Plaintiff objects alleging the list is incomplete and misleading. Although the list does not include everything that Captain Greene noted, it is an accurate reflection of what is contained in the Memorandum. The Court notes that Captain Greene had positive comments regarding Plaintiff in his notes; however, they are immaterial to the motion before it.

COTMSJ0171–72.

Probationary firefighters must complete a module packet that shows they have the skills needed to demonstrate that s/he can perform firefighter tasks, and which must be signed off by a supervisor. *Id.*, Fleck Depo. 10/24/2017 at 30:2–13, Bates No. COTMSJ0175. Drills are a part of this probationary firefighter module. *Id.*, Fleck Depo. 10/24/2017 at 30:25–31:12, Bates Nos. COTMSJ0175–76. At Station 5, Plaintiff was required to do drills which Captain Fleck set up and facilitated. Def.'s SOF (Doc. 46), Fleck Depo. 10/24/2017 at 29:24–30:3, Bates Nos. COTMSJ0174–75. Captain Fleck has everyone at his station perform drills to make sure that they have kept up with their firefighting skills and knowledge.[10] *Id.*, Fleck Depo. 10/24/2017 at 31:5–12, Bates No. COTMSJ0176. Typically, Captain Fleck verbally and mentally review the steps needed to complete the drill with his crew, and then the firefighters go out and perform it. *Id.*, Fleck Depo. 10/24/2017 at 30:4–13, Bates No. COTMSJ0175.

Plaintiff reported to Captain Fleck, who made daily evaluations of Plaintiff's overall or basic performance.[11] *Id.*, Fleck Depo. 10/24/2017 at 26:9–20, Bates No. COTMSJ0172. Captain Fleck's notes included observations, including but not limited to: struggling with his Self-Contained Breathing Apparatus (SCBA) on several occasions; becoming tired and frustrated, stating "I can't do it," and then stopped trying; difficulty making a hose connection because he was tires; and slow getting station chores and cleaning done and failing to meet standards for performing routine station duties. *Id.*,

---

[10] Plaintiff acknowledges that this was Captain Fleck's testimony; however he submits the opinion of firefighter Casey Tribolet, who was assigned to Station 5, but not on Plaintiff's shift, that the drills were more difficult than he would expect. Mr. Tribolet's opinions, however, are immaterial to Captain Fleck's statements regarding why he requires his staff to perform drills.

[11] Plaintiff objects that this statement is incomplete and misleading; however, the fact that Captain Fleck was evaluating Plaintiff's performance daily "[s]ince he was having difficulty[,] [and] [Captain Fleck] was just documenting in case we needed to proceed to termination" is immaterial to the fact that Captain Fleck made the daily evaluations. Neither is it material that Captain Fleck did not keep daily notes for any other employee at that time.

Fleck Notes, Bates Nos. COTMSJ0187–201. On September 26, 2015, during a drill had poor search technique; difficulty advancing a charged transverse hose; and difficulty dragging out the "victim." *See* Def.'s SOF (Doc. 46), Fleck Notes, Bates No. COTMSJ0189. On that same date, Captain Fleck noted that Plaintiff "would have difficulty performing task [sic] under pressure and fire conditions." *Id.* On September 26, 2015, Plaintiff "potentially caused an exposure to a paramedic while on a call this evening[;] [h]e had blood on his gloves and was removing them[,] . . . snapped off his glove splattering blood on the face of a nearby paramedic." *Id.*, Fleck Notes, Bates No. COTMSJ0189. Captain Fleck noted that this "did not meet standards in safety." *Id.* On September 28, 2015, Plaintiff responded to "an early morning code arrest at a rehab facility[,]" and had some difficulty with techniques during the call; Captain Fleck noted that Plaintiff "did not meet standard in performing EMS skill." *Id.*, Fleck Notes, Bates No. COTMSJ0190. On October 2, 2015, Captain Fleck noted that while on scene with a patient trapped in a vehicle, he "didn't have enough confidence in [Plaintiff's] abilities to perform the extrication when it mattered, so [Captain Fleck] had [Plaintiff] observe." Def.'s SOF (Doc. 46), Fleck Notes, Bates No. COTMSJ0192.

Plaintiff acknowledged that he gave up during drills at Station 5.[12] *Id.*, Burroughs Depo. 10/26/2017 at 87:17–19, Bates No. COTMSJ0076. Plaintiff agreed that a firefighter cannot just decide to give up during an emergency call, because "lives can be lost." *Id.*, Burroughs Depo. 10/26/2017 at 95:13–17, Bates No. COTMSJ0079. Burroughs worked out on an almost daily basis, with workouts that consisted of weightlifting and/or cardio exercise. *Id.*, Burroughs Depo. 10/26/2017 at 90:9–16, Bates No. COTMSJ0077. While assigned to Station 5, Plaintiff met with a Peer Fitness trainer

---

[12] Plaintiff objects, stating that "there was no discussion of the fact that Plaintiff was physically unable to do the excessive drills required by Captain Fleck." Pl.'s SSOF (Doc. 51) at 25 ¶ 61. Plaintiff is correct that in this section of Plaintiff's testimony there is no discussion regarding why he gave up, just that he did; however, the why is immaterial to the fact that he did give up. Moreover, Plaintiff's characterization that the drills were excessive is speculative. It is again based on the opinion of another firefighter not present during the drill exercises undertaken by Plaintiff.

once.  *Id.*, Burroughs Depo. 10/26/2017 at 86:17–19, Bates No. COTMSJ0075.  Further, Plaintiff never requested light duty while assigned to Station 5.  *Id.*, Burroughs Depo. 10/26/2017 at 145:14–16, Bates No. COTMSJ0099.  Neither did Plaintiff ever tell Captain Fleck that he had an injury or needed medical treatment.  Def.'s SOF (Doc. 46), Fleck Depo. 10/24/2017 at 75:11–13 & 81:10–12, Bates Nos. COTMSJ0184–85.  Additionally, Plaintiff was never placed on work restrictions while assigned to Station 5.  *Id.*, Fleck Depo. 10/24/2017 at 75:14–16, Bates No. COTMSJ0184.

On or about October 19, 2015, Plaintiff was given TFD's Performance Evaluation for Probationary Firefighter.  *Id.*, TFD Perf. Eval. for Probationary Firefighter 10/19/2015, Bates Nos. COTMSJ0203–05.  Plaintiff's evaluation indicated that he needed improvement on eight (8) out of seventeen (17) categories for which he was provided feedback.  *Id.*  The evaluation also contained a narrative portion in which Plaintiff was given specific feedback related to his failure to meet standards and was notified that "[i]f [he] fail[ed] to meet standards or slid[] backwards into [his] old work habits, dismissal may still be an option."[13]  *Id.*  Plaintiff and each TFD employee in his chain-of-command signed off on the evaluation—Assistant Chief Brad Olson, Deputy Chief Jeff Thompson, Battalion Chief Kristopher Blume, and Captain Glenn Fleck.[14]  *Id.*

### 5.  Plaintiff's Termination

On November 3, 2015, Burroughs responded to a Full Alarm for smoke coming

---

[13] Plaintiff disputes the substance of the evaluation based on his statement of facts and "the fact that the evaluation followed Captain Wuerfel's failed attempt to terminate him while at the academy and her actions to make sure the job in jeopardy status followed him throughout his probationary year."  Pl.'s SSOF (Doc. 51) at 26 ¶ 67.  As noted previously, Captain Wuerfel did not unilaterally decide to make Plaintiff's job-in-jeopardy status follow him for a year, rather Chief Fischback requested that Captain Wuerfel to make the job in jeopardy last throughout Plaintiff's probationary year, because the class was so close to graduating, there was insufficient time to evaluate Plaintiff further.  Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 55:10–56:22, Bates Nos. COTMSJ0149–50.

[14] Plaintiff does not object to this portion of Defendant's statement of facts; however, the Court notes that the evaluation form does not reflect the signatures of the named individuals or acknowledgement of the evaluation.

from an apartment at Ft. Lowell Road and Palo Verde Street.[15] Def.'s SOF (Doc. 46) at ¶ 68; *see also* Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 104:11–105:5, 107:10–16, Bates Nos. COTMSJ0081–83. Plaintiff was given orders to follow a senior firefighter, Sean Palese. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 107:10–16, Bates No. COTMSJ0083. Plaintiff "vaguely" remembers this incident, and testified that he followed Senior Firefighter Palese into the apartment complex, but not into the apartment. *Id.* Plaintiff was trained to stay with his partner and not go off on his own. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 109:8–18, Bates No. COTMSJ0084. On November 10, 2015, Captain Mark Maibauer sent an e-mail to Battalion Chief Kristopher Blume regarding Plaintiff and the November 3, 2015 call.[16] *Id.*, Maibauer E-mail to Blume 11/10/2015, Bates No. COTMSJ0206. That same date, Captain Fleck spoke with Senior Firefighter Palese and Captain Maibauer about the November 3, 2015 incident. *Id.*, Fleck Depo. 10/24/2017 at 44:22–47:7, Bates Nos. COTMSJ0177–80. Also on that date, Captain Fleck authored a Memorandum to Chief Blume for Recommendation for Termination of Probationary FF Michael Burroughs. *Id.*, Fleck Depo. 10/24/2017 at 49:16–50:10, Bates Nos. COTMSJ0181–82 & Exh. "3"— Fleck Memo to Blume 11/10/2015, Bates No. COTMSJ0202. Prior to authoring the memorandum, Captain Fleck spoke with Chief Blume about the incident, which Captain Fleck considered a "severe safety issue," and that Plaintiff was still not performing up to standards. *Id.*, Fleck Depo. 10/24/2017 at 50:11–19, Bates No. COTMSJ0182. Chief Blume agreed with Captain Fleck's assessment. Def.'s SOF (Doc. 46), Fleck Depo. 10/24/2017 at 50:23–24, Bates No. COTMSJ0182. Chief Blume recalls receiving the memorandum from Captain Fleck, as well as having a telephone conversation with him. Def.'s SOF (Doc. 46), Blume Depo. 11/3/2017 at 56:18–58:1, Bates Nos. COTMSJ0208–

---

[15] Plaintiff objected to DSOF 68; however, he does not dispute that the call occurred, and was on this date.

[16] Plaintiff objects to the contents of the e-mail as inadmissible hearsay; however, the fact that the e-mail was sent is not hearsay.

10. Chief Blume then called Assistant Chief of Operations Brad Olson, and said, "Chief, here's where we're at. Here's the recommendation I have and I'm supporting the recommendation." *Id.* Chief Blume wrote a memo recommending termination to Assistant Chief Olson; met with Plaintiff and Captain Fleck; then the three of them were to go to fire central and sit down with the Assistant Chief to discuss termination of Plaintiff's employment. *Id.*

Plaintiff was terminated on November 10, 2015, his next shift following the November 3, 2018 fire call. Def.'s SOF (Doc. 46), Burroughs Depo. at 110:15–111:2, Bates Nos. COTMSJ0085–86. Plaintiff was told that he failed probation, and understood that he was a probationary firefighter and if he did not meet standards he would be terminated. *Id.*, Burroughs Depo. 10/26/2017 at 111:3–16, Bates No. COTMSJ0086 & Personnel Action Request, Bates No. COTMSJ0218. Captain Fleck and Chief Blume recommended termination; however, the ultimate decision to terminate Plaintiff was made by Assistant Chief Brad Olson, a higher ranking TFD employee.[17] *Id.*, Blume Depo. 11/3/2017 at 58:4–16, Bates Nos. COTMSJ0210–11.

### B. *Tucson Fire Department's Policies and Procedures*

The Tucson Fire Department ("TFD") Manual of Operations instructs that:

> Every member of the TFD, regardless of rank or position, is expected to behave in a professional manner, on and off duty, which reflects the department's mission, values, and purpose. Every member is responsible for observing the Rules of Conduct as listed below. Failure to do so may result in disciplinary action ranging from verbal counseling to discharge.

Def.'s SOF (Doc. 46), TFD Manual of Operations § 214.4(1)(a) at Bates No. COTMSJ0001. TFD employees are required to be familiar with and follow all TFD, City of Tucson, and Civil Service rules and regulations, administrative directives, and policies. *Id.*, TFD Manual of Operations § 214.4 at Bates Nos. COTMSJ0001–0003. The TFD

---

[17] Plaintiff objects because Captain Fleck believed that it was ultimately his evaluation and recommendation that resulted in Plaintiff's termination. Pl.'s SSOF (Doc. 51) at 29 ¶ 93. Irrespective of Captain Fleck's belief, he was not the final decision maker regarding employment.

Manual of Operations further states that the Probationary Firefighter Training and Evaluation Program "is designed to achieve several objectives:

1. Provide uniformity in training and performance standards for the probationary firefighters.

2. Assist the company officer in providing a more coordinated and effective program for the probationary firefighters.

3. Complete State Firefighter II study requirements leading to Firefighter II certification.

4. Transition the training responsibility from the Academy staff to the company officer.

*Id.*, TFD Manual of Operations, § 204(G)(2)(a) at Bates No. COTMSJ0011. The Manual of Operations directs that "[t]he *probationary firefighter* has the responsibility to complete all assignments completely and on time, maintain and improve skills learned in the Academy, and integrate themselves fully into the Fire Department team. Those probationary firefighters who are unable to meet these responsibilities will find themselves falling behind and possibly unable to complete their probation."[18]  *Id.*, TFD Manual of Operations, §204(G)(2)(B)(1) at Bates No. COTMSJ0011 (emphasis in original).

"The basic duties of a firefighter require that the employee be in good health and physically fit."[19]  *Id.*, TFD Manual of Operations, § 210.1.1 at Bates No. COTMSJ0021. "Each Department Peer Fitness Trainer will be certified through the International Association of Fire Fighters/International Association of Fire Chiefs and/or the American Council of Exercise Peer Fitness Training Program."  Def.'s SOF (Doc. 46), TFD Manual of Operations, § 210.5.3(A) at Bates No. COTMSJ0022.  TFD's stated policy is "to

---

[18] Plaintiff acknowledges the excerpt, but asserts that the "policy does not contain language or take into consideration firefighters who suffer a work related injury during the probationary period." Pl.'s SSOF (Doc. 51) at 19.

[19] Plaintiff acknowledges the excerpt, but notes that "firefighters may suffer a work-related injury and are protected under the American with Disabilities Act. Pl.'s SSOF (Doc. 51) at 19.

maintain the highest level of confidentiality concerning member health and fitness issues[,] [with] . . . [e]ach Department Peer Fitness Trainer . . . bound by the same rules of individual medical confidentiality as the City Physician." *Id*., TFD Manual of Operations, § 210.6.1 at Bates Nos. COTMSJ0022–0023. TFD policy mandates that "[m]edical and fitness records are strictly confidential[,] [and] . . . will be maintained in the office of the City Physician and will not be kept with personnel records." *Id.*, TFD Manual of Operations, § 210.6.2(A) at Bates No. COTMSJ0023. Further, "[m]edical and fitness records will not be released without the signed written consent of the member." *Id.*, TFD Manual of Operations, § 210.6.2(B) at Bates No. COTMSJ0023.

The TFD Manual of Operations addresses "Light Duty" assignments, directing "[e]mployees who have temporary work restrictions resulting from an on-the-job illness or injury must have a release from the City Physician for light duty specifying the work restrictions." *Id.*, TFD Manual of Operations, §203.12(A)(4) at Bates No. COTMSJ0029. "Employees who have temporary work restrictions resulting from an off-the job illness or injury must submit a light duty request, by memorandum from the employee to the Fire Chief through channels." Def.'s SOF (Doc. 46), TFD Manual of Operations, § 203.12(B) at Bates No. COTMSJ0029. "The memo must be supported with a documented work status release from the attending physician that includes the work restrictions." *Id.*, TFD Manual of Operations, § 203.12(B) at Bates No. COTMSJ0029.

Section 217 of the TFD Manual of Operations describes the procedures for reporting on-the-job injuries. *Id.*, TFD Manual of Operations, § 217 at Bates No. COTMSJ0032–0035. "All Fire Department personnel are responsible for understanding and adhering to this policy." *Id.*, TFD Manual of Operations, § 217, *General* at Bates No. COTMSJ0032. Employees are directed to "[n]otify immediate supervisor as soon as reasonably possible (within 24 hours) that an injury was sustained." *Id.*, TFD Manual of Operations, § 217, *Responsibility*, 1.a. at Bates No. COTMSJ0032. Supervisors are directed that "[o]nce notified that [an] employee sustained an injury[,] [the supervisor must] fill out [a] Supervisor's Report of Injury (Part A)[.]" Def.'s SOF (Doc. 46), TFD

Manual of Operations, § 217, *Responsibility*, 2.a. at Bates No. COTMSJ0032. Supervisors are further directed to "[d]iscuss with [the] employee [the] severity of injury and whether [the] employee needs to seek medical treatment." *Id.*, TFD Manual of Operations, § 217, *Responsibility*, 2.b. at Bates No. COTMSJ0032. The manual contemplates that "[i]n normal situations the determination is made whether or not the employee can perform their assigned duties." *Id.* If a determination is made that medical treatment is needed, the supervisor is to "[e]nsure that [the] employee has Part B of Supervisor's Report of Injury with them." *Id.*, TFD Manual of Operations, § 217, *Responsibility*, 2.b.i. at Bates No. COTMSJ0032. "All industrial injuries require City Physician . . . clearance to return to work." *Id.*, TFD Manual of Operations, § 217, *Return to Work*, 1.a. at Bates No. COT MSJ0033.

Plaintiff understood that as a firefighter, if he was injured, he needed to be evaluated by the City Physician. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 34:5–19, Bates No. COTMSJ0048.

### C.   *TFD Knowledge Regarding Plaintiff's Alleged Disability*

Plaintiff testified that his disabilities include a hurt back from the sprain at the Academy, and his previous injuries to his back and his hurt knee.[20] Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 99:9–21, 119:7–12, Bates Nos. COTMSJ0080, COTMSJ0092. Plaintiff was working at Rincon Valley when he suffered both injuries. *Id.*, Burroughs Depo. 10/26/2017 at 112:21–25, 113:9–11, Bates Nos. COTMSJ0087–88. Plaintiff testified that he never told Captain Lopez, Captain Wuerfel, or Paramedic Berndt he had a disability. *Id.*, Burroughs Depo. 10/26/2017 at 134:21–135:4, Bates Nos. COTMSJ0093–94. Plaintiff further testified that he had never applied for disability

---

[20] In Plaintiff's affidavit accompanying his response to Defendant's motion for summary judgment, Plaintiff states that "[i]n 2007, [he] rolled [his] ankle at work and required surgery in July of 2007[,] . . . [i]n approximately 2009, while being lifted through a window during a drill [he] suffered a herniated disk[,] and [i]n approximately 2011, [he] suffered an anterior cruciate ligament ("ACL") injury to [his] knee." Pl.'s SSOF (Doc. 51), Burroughs Aff. 4/26/2018 (Exh. "2") at ¶¶ 2, 3, 4. The 2009 and 2011 injuries as pre-existing conditions on Plaintiff's Pension Board Examination Results signed by Wayne F. Peate, M.D. *Id.*, Exh. "1."

benefits, nor had anyone made a determination that he is unable to work due to any disability. *Id.*, Burroughs Depo. 10/26/2017 at 137:5–21. Plaintiff also testified that with regard to daily activities, there are a "lot of things cause a lot of pain, but I don't know that there's anything yet that I can't do." *Id.*

Captain Wuerfel testified that she did not know that Plaintiff had a disability, and was not aware of his termination until she was contacted by the City Attorneys regarding this lawsuit.[21] Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 69:15–70:4, Bates Nos. COTMSJ0151–52. Captain Wuerfel further testified that she never saw any of Plaintiff's medical information in Dr. Peate or Well America's possession.[22] *Id.*, Wuerfel Depo. 11/6/2017 at 75:24–76:6, Bates No. COTMSJ0153–54. Captain Ed Lopez also did not know about Plaintiff's alleged disability.[23] *Id.*, Lopez, Jr. Depo. 11/2/2017 at 99:6–8, Bates No. COTMSJ0216. Chief Blume did not know about Plaintiff's alleged disability, nor did he know that Plaintiff filed a workmen's compensation claim while he was employed with TFD. *Id.*, Blume Depo. 11/3/2017 at 80:21–81:9, Bates Nos. COTMSJ0212–13. Neither Chief Blume nor any of his Captains had access to Plaintiff's medical file or information. *Id.* Plaintiff "just felt like" Chief Blume knew about his workmen's compensation claim; however, admits that he is not aware of any specific conversation that would lead to that conclusion. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 114:11–118:24, Bates Nos. COTMSJ0089–91. Plaintiff also believed that Captain Fleck knew about his workmen's compensation claim, because he worked under

---

[21] Plaintiff disputes this statement noting Captain Wuerfel's presence at Plaintiff's injury during the academy and documenting his physical struggles during the academy. Pl.'s SSOF (Doc. 51) at 28 ¶ 85.

[22] Plaintiff disputes this statement, because of Captain Wuerfel's transfer of the Supervisor's Report of Injury to a secretary after Plaintiff's injury during the Academy. Pl.'s SSOF (Doc. 51) at 28 ¶ 86. Captain Wuerfel's knowledge of Plaintiff's Academy injury is immaterial to Plaintiff's pre-existing conditions that he alleges are disabilities.

[23] Plaintiff disputes this statement, because of Captain Lopez's preparation of the Supervisor's Report of Injury to a secretary after Plaintiff's injury during the Academy. Pl.'s SSOF (Doc. 51) at 28 ¶ 87. Captain Lopez's knowledge of Plaintiff's Academy injury is immaterial to Plaintiff's pre-existing conditions that he alleges are disabilities.

1   Chief Blume, but again was not aware of any specific conversation that would lead to that
2   conclusion. *Id.*

3

4   **II.    STANDARD OF REVIEW**

5          Summary judgment is appropriate when, viewing the facts in the light most
6   favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255,
7   106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), "there is no genuine issue as to any
8   material fact and [] the moving party is entitled to a judgment as a matter of law."  Fed.
9   R. Civ. P. 56(c).  A fact is "material" if it "might affect the outcome of the suit under the
10  governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury
11  could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at
12  2510.  Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant
13  to the consideration of a motion for summary judgment.  *Id.*  In order to withstand a
14  motion for summary judgment, the nonmoving party must show "specific facts showing
15  that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106
16  S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  Moreover, a "mere scintilla of evidence" does
17  not preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at
18  2512.  The United States Supreme Court also recognized that "[w]hen opposing parties
19  tell two different stories, one of which is blatantly contradicted by the record, so that no
20  reasonable jury could believe it, a court should not adopt that version of the facts for
21  purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372,
22  380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

23

24  **III.   ANALYSIS**

25         Defendant seeks summary judgment asserting that Plaintiff cannot present a prima
26  facie case of discrimination under the ADA.  Def.'s Mot. for Summ. J. (Doc. 45) at 4–7.
27  Conversely, Plaintiff argues that he was a qualified individual with a disability.  Pl.'s
28  Response (Doc. 50) at 7–8.  Defendant further asserts that Plaintiff was terminated due to

performance issues, and that the evidence does not support that Plaintiff was terminated because he filed a workers' compensation claim, and as such the City did not violate A.R.S. § 23-1501(A)(3)(c)(iii). Def.'s Mot. for Summ. J. (Doc. 45) at 10–15. Plaintiff asserts that sufficient evidence exists to show that TFD knew Plaintiff had a disability and its reasons for termination are pretextual. Pl.'s Response (Doc. 50) at 9–13.

### A.     Americans with Disabilities Act

#### 1.  In General

The Americans with Disabilities Act ("ADA") prohibits discrimination against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A disability, with respect to an individual, means:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

> (B) a record of such an impairment; or

> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

To establish a *prima facie* case under the ADA, a plaintiff must prove (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodation; and (3) he was terminated or subjected to an adverse employment action because of his disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (citations omitted); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). If a plaintiff has met this initial burden, the burden then shifts to defendant to put forward a legitimate, non-discriminatory reason for its actions. *Snead v. Metro. Prop. & Cas Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). If the defendant articulates a legitimate, non-discriminatory reason for its actions, the burden shifts again to the plaintiff to show that the defendant's stated reason is no more than a pretext for discrimination. *Id.*; *see also*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

## 2. Prima facie case

The ADA defines a "qualified individual" as "an individual with a disability [who] . . . satisfies the requisite skill, experience, education, and other job-related requirements of the employment position such person holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m); *see also* 42 U.S.C. § 12111(8). Qualification standards include the "skill, experience, education, physical, medical, safety and other requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired." 29 C.F.R. § 1630.2(q). Plaintiff must show the ability to perform the essential functions of the job with or without a reasonable accommodation. 42 U.S.C. § 12112(b)(5)(A), 12111(8); *see also Cooper v. Neiman Marcus Group*, 125 F.3d 786, 790 (9th Cir.1997) (stating elements); *Kennedy*, 90 F.3d at 1481 (9th Cir.1996).

As stated above, the term 'disability' under the ADA means "a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual" or "[a] record of such an impairment." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). A plaintiff is "substantially limited" in a major life activity if that individual is "significantly restricted as to the condition, manner, or duration under which [he] can perform a major life activity" in comparison to an "average person in the general population." *Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003) (citations omitted). In deciding whether an impairment is substantially limiting, courts consider the nature and severity of the impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact of the impairment. *Fraser*, 342 F.3d at 1038.

Plaintiff asserts that he is a qualified individual with a disability, because between approximately 2007 and his employment at TFD in 2015, he had suffered a number of injuries, and has daily pain because of these conditions. Pl.'s Response (Doc. 50) at 8–9.

Plaintiff further asserts that he "suffers daily pain which prevents him from being able to sit in a chair for more than an hour and a half, including while driving and he has difficulty sleeping." *Id.* at 8. On April 9, 2015, Plaintiff filled out a Fitness Questionnaire, and marked "No" to all of the questions including "Do you have any injuries, illnesses or disabilities that would prevent you from performing a fitness assessment?" Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 27:16–28:9, Bates Nos. COTMSJ0045–0046 & Exh. "3," Bates No. COTMSJ0104. On the same date, City Physician Wayne Peate, M.D. evaluated Plaintiff and concluded he was capable of performing the duties of a firefighter. *Id.*, Burroughs Depo. 10/26/2017 at 28:19–29:24, Bates No. COTMSJ0046–0047 & Exh. "4," Bates No. COTMSJ0105. In so doing, Dr. Peate noted Plaintiff's 2011 right knee injury and conservatively treated herniated lumbar disk as pre-existing conditions. Pl.'s SSOF (Doc. 51), Exh. "1"—Pension Bd. Exam. Results 4/9/2015. The form defines a pre-existing condition as a "medical condition that **could** create a disability that a person has been treated for." *Id.* (emphasis added). During the hiring process, Plaintiff completed a New Hire EEO form, and marked "No" next to "Disabled." *Id.*, Burroughs Depo. 10/26/2017 at 144:23–145:12, Bates Nos. COTMSJ0098–0099 & Exh. "24," Bates No. COTMSJ0134.

Sometime in May or June, Captain Wuerfel counseled Plaintiff regarding some of the issues that he was having, including his inability to complete drills and his poor attitude. Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 28:11–29:5, Bates Nos. COTMSJ0137–38. Captain Wuerfel asked Plaintiff if there was something going on that he wanted them to know, and he responded that he was thinking about quitting the academy. *Id.* Plaintiff began to cry and explained that the academy was too hard for him; his wife was not letting him see his child; and he was having personal issues. Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 28:11–29:5, Bates Nos. COTMSJ0137–38.

On June 22, 2015, Plaintiff suffered a "lumbar strain" while performing a tire flipping exercise at the Academy. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 35:8–23, 36:21–37:4, 37:14–38:18, Bates Nos. COTMSJ0049, COTMSJ0050–52, &

Exh. "5"—City of Tucson Supervisor's Report of Injury (Part B) to be Completed by Evaluating Physician, Bates No. COTMSJ0106. Dr. Eskay-Auerbach released Plaintiff back to work without restriction. *Id.*, Burroughs Depo. 10/26/2017 at 38:19–40:11, Bates Nos. COTMSJ0052–54 & Exh. "5," Bates No. COTMSJ0106 & Exh. "6"—Tucson Fire Training Academy—Training Activity Restrictions, Bates No. COTMSJ0107. The physical activities Dr. Eskay-Auerbach cleared Plaintiff to perform included running up to five (5) miles; sprinting short distances; basic calisthenics (including but not limited to: push-ups, pull-ups, sit-ups, core strength exercises and stretching); pushing, pulling and controlling charged hose lines with a nozzle reaction of 75 pounds of pressure directed against the recruit; executing fire ground evolutions (such as dragging a fire hose, raising ladders, operating gasoline powered equipment, etc.) while wearing up to 60 pounds of equipment; climbing a 100; aerial ladder with up to 100 pounds of safety equipment and tools; climbing a six-story staircase up to 20 times in succession; dragging and/or lifting a 180 pound person while wearing up to 60 pounds of safety equipment with the assistance of one other person; raising and carrying ground ladders weighing 30 to 50 pounds while wearing 60 pounds of safety equipment; working in extreme temperatures (350 plus degrees for 10 to 15 minutes while wearing up to 60 pounds of safety equipment); and hoisting up to 50 pounds of equipment to the top of a six-story building with a rope while wearing up to 60 pounds of safety equipment. *Id.*, Burroughs Depo. 10/26/2017, Exh. "6"—Tucson Fire Training Academy—Training Activity Restrictions, Bates No. COTMSJ0107. Plaintiff returned to the academy following his evaluation by Dr. Eskay-Auerbach, and upon his return Captain Wuerfel saw his fit for duty paperwork. Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 36:18–37:10, Bates Nos. COTMSJ0140–41. Subsequently, on June 24, 2015, Plaintiff was again evaluated by the City Physician. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 40:17–41:16, Bates Nos. COTMSJ0054–55 & Exh. "7"—Tucson Fire Training Academy—Training Activity Restrictions 6/25/2015, Bates No. COTMSJ0108. Dr. Stephanie Lundell determined that he could perform the tasks required of a firefighter and released him back to the

Academy without restriction. *Id.* Plaintiff acknowledges that he did not have any work restrictions while at the Academy. *Id.*, Burroughs Depo. 10/26/2017 at 29:22–24, Bates No. COTMSJ0047 & Exhs. 4, 5, 6 & 14, Bates Nos. COTMSJ0105–07, COTMSJ0109. On July 2, 2015, Dr. Eskay-Auerbach evaluated Plaintiff a second time, and again determined that he could perform the tasks required of a firefighter without restriction. *Id.*, Burroughs Depo. 10/26/2017 at 62:3–63:8 & Exh. "14," Tucson Fire Training Academy—Training Activity Restrictions 7/2/2015, Bates Nos. COTMSJ0065–66, COTMSJ0109.

After the Academy Plaintiff was assigned to Station 16, and during his time there was never under work restrictions or requested light duty. *Id.*, Burroughs Depo. 10/26/2017 at 75:12–21, 79:23–24, Bates Nos. COTMSJ0071, COTMSJ0073. Plaintiff was later assigned to Station 5, and again never requested light duty, was under work restrictions, or told his supervising Captain that he had an injury or needed medical treatment. Def.'s SOF (Doc. 46), Burroughs Depo. 10/26/2017 at 75:11–16, 81:10–12, 145:14–16, Bates Nos. COTMSJ0099, COTMSJ0184–85. During this time, Plaintiff worked out almost daily doing both weightlifting and/or cardio exercise. *Id.*, Burroughs Depo. 10/26/2017 at 90:9–16, Bates No. COTMSJ0077.

Plaintiff's statements regarding the degree and nature of his pain are inconsistent with the evidence of his activity levels during and after the Academy, as well as the medical evaluations. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking . . . any supporting evidence, is insufficient to create a genuine issue of material fact."). Furthermore, when asked about his difficulties, he pointed to personal issues other than physical ailments. The record does not support a conclusion that Plaintiff was substantially limited by his impairments. *See Fraser*, 342 F.3d at 1040. As such, Plaintiff has failed to establish a prima facie case of disability under the ADA.

### 3. Legitimate, non-discriminatory reason for termination

Even if the Court finds that Plaintiff could establish a prima facie case of

disability, the City of Tucson has provided a legitimate, non-discriminatory reason for his termination. As early as his time at the Academy, Plaintiff was counseled regarding issues such as a poor attitude and an inability to complete drills. Def.'s SOF (Doc. 46), Wuerfel Depo. 11/6/2017 at 28:11–29:5, 29:21–30:3, Bates Nos. COTMSJ0137–39. Plaintiff's physical conditioning continued to be an issue at his first post-Academy assignment to Station 16. *Id.*, Greene Depo. 11/7/2017 at 19:17–22, Bates No. COTMSJ0164 & Exh. "2," Bates Nos. COTMSJ0167–69. At Station 5, Plaintiff's areas of weakness were not limited to physical conditioning. *See id.*, TFD Perf. Eval. for Probationary Firefighter 10/19/2015, Bates Nos. COTMSJ0203–05 ("General Work Habits," "Safety," "Knowledge of Policies & Procedures," "Communications Equipment & Procedures," and "EMT Skills" were listed as areas requiring improvement). Plaintiff was terminated after a call in which he did not follow his senior firefighter into an apartment. *Id.*, Burroughs Depo. 10/26/2017 at 104:11–105:5, 107:10–16, Bates Nos. COTMSJ0081–83. Captain Fleck noted that Plaintiff's failure to communicate with either his Captain or partner resulted in this error. *Id.*, Fleck Depo. 10/24/2017 at 49:16–50:10, Bates Nos. COTMSJ0181–82 & Exh. "3"—Fleck Memo to Blume 11/10/2015, Bates No. COTMSJ0202. In recommending Plaintiff's termination, Captain Fleck further noted Plaintiff's "difficulty retaining information and skills taught to him, demonstrated, and practiced[,]" difficulty with EMT skills, and ongoing inability to meet all of the standards required of firefighters. *Id.* The City has demonstrated that Plaintiff's ongoing performance issues were the reason for his termination.

### 4. Pretext

Plaintiff asserts that the City's reasons for firing him were pretext, as evidenced by Captain Wuerfel's attempt to terminate him three (3) days after his injury. Pl.'s Response (Doc. 50) at 11–12. Plaintiff further argues that Plaintiff's actual termination four and a half months later, and his supervisors giving him more onerous exercises, demonstrate that he was targeted because of his disabilities. *Id.* The admissible evidence does not support Plaintiff's claim.

As discussed in Section III.A.3., *supra*, the record reflects that Plaintiff had ongoing performance issues regarding his physical fitness, mental focus, and attitude. Plaintiff graduated the Academy and continued working at two different stations prior to his termination. Plaintiff's allegation that he was "targeted" is unsupported by the documented ongoing concerns. Even if the Court accepts Plaintiff's allegation that he was given more onerous fitness drills than other firefighters, this does not negate the issues with communication, mental focus, and poor attitude that were also grounds for his termination. Accordingly, Plaintiff has not shown that the City's proffered reasons for firing were pretextual.

### B.    Retaliation

Arizona's Employment Protection Act, A.R.S. § 23-1501(A)(3)(c)(iii), provides that an employee has a claim against an employer for wrongful termination if the employer has terminated the employment relationship in retaliation for "[t]he exercise of rights under the workers' compensation statutes prescribed in chapter 6 of this title." A.R.S. § 23-1501(A)(3)(c)(iii).  To succeed on such a claim, Plaintiff must show that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the two. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1113 (9th Cir. 2003).

Plaintiff cannot show that there is a causal link between his worker's compensation claim and his termination. The evidence shows that Chief Blume did not know that Plaintiff had made a worker's compensation claim. Def.'s SOF (Doc. 46), Blume Depo. 11/3/2017 at 80:21–81:9, Bates Nos. COTMSJ0212–13. Moreover, the evidence does not support Plaintiff's claim that Captain Fleck knew of the claim. *Id.*, Burroughs Depo. 10/26/2017 at 114:11–118:24, Bates Nos. COTMSJ0089–91. Further, the ultimate decision to terminate Plaintiff was made by Assistant Chief Brad Olson. *Id.*, Blume Depo. 11/3/2017 at 58:4–16, Bates Nos. COTMSJ0210–11. Plaintiff has failed to meet his burden. The record demonstrates that he was fired because of poor performance, and there is no evidence of retaliation.

## IV. CONCLUSION

Based upon the foregoing, the Court finds that Plaintiff has failed to meet his burden in opposing Defendant's motion for summary judgment. Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Doc. 45) is GRANTED. IT IS FURTHER ORDERED that this matter is DISMISSED WITH PREJUDICE. **The Clerk of the Court shall enter judgment and close the case.**

Dated this 16th day of October, 2018.

Honorable Bruce G. Macdonald
United States Magistrate Judge